UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-cr-20410-LENARD/Turnoff

UNITED STATES OF AMERICA,

v.

ARTRELL TERRENCE GRAY,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the undersigned upon Defendant Artrell Terrence Gray's Motion to Suppress. **[DE 598]**. This matter was referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida. **[DE 600]**. A hearing on this motion was held on February 16, 2011. **[DE 614]**. The Court has considered the written and oral arguments, the testimonial and record evidence, the court file, the applicable law, and is otherwise duly advised in the premises.

**Facts**

On November 13, 2009, Federal Bureau of Investigations ("FBI") Special Agent Lionel S. Lofton, Jr.[1], applied for and obtained a Search Warrant to search Defendant Gray's residence located at 3001 NW 174 Street, Miami Gardens, FL ("the 3001 property"). The search warrant affidavit was prepared by Agent Lofton and contained two attachments–"A" and "B."[2]

[1]Agent Lofton has been with the FBI since approximately 1996 and is assigned to the High Intensity Drug Trafficking Area ("HIDTA") task force.

[2]The search warrant contained the same two attachments.

In attachment A to the affidavit, Agent Lofton described the residence to be searched as:

> 3001 NW 174 Street, Miami Gardens, Florida 33056, is a single story structure, concrete block construction, peach colored walls with an attached front porch that is painted an orange color. The structure is located on the North side of NW 174 Street. The entrance to the residence is a single framed door facing South towards NW 174 Street. There were no visible house numbers affixed to the residence. The property is surrounded by a chain link fence with an open drive way, and walk way entrance.

In support of probable cause to search the 3001 property, the affidavit alleged as follows: (1) Based upon a review of wire interceptions and other information obtained from the Miami Gardens Police Department ("MGPD"), Agent Lofton believed that there would be narcotics, ammunition and firearms in the residence;[3] (2) An individual from the area, who was arrested for possession of marijuana, told law enforcement that the 3001 property was currently being used for the distribution of narcotics and contained firearms and ammunition, Aff., ¶ 11, p. 8; and (3) On November 6, 2009, MGPD detectives observed approximately 15-20 individuals known to be members of the "Murda Grove Boys" at the 3001 property. Id.

The search warrant was executed on November 17, 2009. The agents made entry through the front door of the 3001 property. Upon entry, the agents discovered that the residence had been divided by an improvised wall partition, which made the rear portion of the residence inaccessible from the inside. Several agents then proceeded toward the rear of the residence and gained entry to the back portion. Once inside the back area, the agents discovered narcotics, firearms and ammunition, as well as related items.

---

[3]These items were described in attachment B to the affidavit.

Thereafter, the agents contacted Defendant and Eion Graham.[4] Defendant advised that he resided in the back portion of the 3001 property at a cost of $400 per month, and that his brother, co-Defendant Antwan Gray, stayed there from time to time. Eion Graham confirmed that Defendant resided in the back portion of the 3001 property but stated that he paid $375 per month.

**Discussion**

**1. Probable cause to search 3001 NW 174 Street, Miami Gardens, FL.**

Defendant Gray argued that the evidence seized from the 3001 property should be suppressed because the affidavit was insufficient to support a finding of probable cause. Search warrants may only be issued upon a showing of probable cause which entails "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Phillips, 327 Fed. App'x 855, 859 (11th Cir. 2009) (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983)). A "fair probability" does not connote any particular mathematical degree of probability. Maryland v. Pringle, 540 U.S. 366, 370 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances . . . . Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision.") (internal quotation omitted). However, probable cause cannot be supported by demonstrating that the items seized could have been found at the specified location at some time in the past. United States v. Domme, 753 F.2d 950, 953 (11th Cir. 2002). Rather, the Government must establish facts that make

[4]The residence is owned by Robert and Lorna Graham, but the electrical service is registered to Eion Graham.

it likely that the items being sought are in that place at the time the warrant issues. United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). Thus, warrant applications containing stale information fail to establish probable cause that illegal activity is continuing. United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). As the Government correctly argued, there is no bright-line standard for determining whether information is stale. Id. Courts conduct their review on a case-by-case basis considering various factors, including (1) the maturity of the information; (2) the nature of the suspected crime; (3) the habits of the accused; (4) the character of the items sought; (5) and the nature and function of the premises to be searched. Id. Stale information is not necessarily fatal if the affidavit updates, substantiates, or corroborates the stale material. Id.; United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000) (quoting United States v. Magluta, 198 F.3d 1265, 1272 (11th Cir. 1989)). Additionally, the "basic criterion as to the duration of probable cause [or staleness] is the inherent nature of the crime." United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984).

The Court's duty is to ensure that the issuing magistrate judge had a "substantial basis" for concluding that the affidavit in support of the search warrant established probable cause. Gates, 462 U.S. at 214. The test is whether the facts presented in the affidavit would "warrant a man of reasonable caution" to believe that evidence of a crime will be found at the place to be searched. United States v. Strauss, 678 F.2d 886, 892 (11th Cir. 1982). Accordingly, reviewing courts must give "substantial deference to an issuing magistrate's determination of probable cause." United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994).

First, Defendant argued that the only information pertaining to the 3001 property was a conclusory statement set forth in Paragraph 11 that, based on a review of certain wire intercepts, the

residence was being used for drug storage and distribution. However, no time frame was provided for when those wire intercepts implicated the 3001 property. Agent Lofton set forth in the affidavit that, through the wire intercepts, the agents were able to identify the 3001 property about 5 weeks prior to the date of application of the warrant. Those same wire interceptions revealed that the 3001 property was still being used in connection with the distribution and storage of narcotics and firearms. Aff. at ¶ 11. These facts led Agent Lofton to conclude that there would be narcotics, weapons, and ammunition inside the 3001 property. Given the ongoing nature of the narcotics distribution conspiracy, the likelihood that the information was stale was diminished. *See, e.g.*, United States v. Harrington, 204 Fed. App'x 784, 787 (11th Cir. 2006) (affidavit stated that defendant was involved in two continuing drug importation conspiracies, so it was reasonable for the issuing magistrate to assume that the activity mentioned in the affidavit was ongoing). Moreover, the Government argued that, even if the affidavit contained stale information, Agent Lofton substantiated and corroborated the assertions based on the wire interceptions through the cooperating individual who, 10 days prior to the execution of the affidavit, identified the 3001 property as a location currently being used for narcotics distribution.

Second, Defendant attacked the veracity of the informant who was arrested for marijuana possession and claimed to have knowledge of the presence of drugs and weapons at the 3001 property. Defendant argued that the affidavit made no reference to the source's background, whether the source had provided reliable information in the past, nor any other information tending to establish credibility. Although demonstrating that an informant has provided correct information makes it more likely that his other claims will also be true, see Spinalli v. United States, 393 U.S.

410, 427 (1969), there is no *per se* rule requiring police corroboration of information provided by an informant, United States v. Brundidge, 170 F.3d 1350, 1353 (11th Cir. 1999). "[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." Martin, 297 F.3d at 1314. In this case, the information provided by the informant was corroborated by the wire intercepts, See Harrington, 204 Fed. App'x at 787-88 (upholding application for wiretap where law enforcement corroborated confidential informant with other facts), as well as by the agents' observations of other known members of the Murda Grove Boys at the 3001 property. Based upon these facts, Agent Lofton reasonably concluded that there was probable cause to believe that the residence contained drugs and firearms.

Finally, Defendant argued that presence, alone, was insufficient to provide probable cause to search the 3001 property. According to the affidavit, seven days prior to the execution of the affidavit, MGPD detectives observed 15-20 individuals who were known members of "Murda Grove Boys" gang at the 3001 property. It is reasonable to conclude that the presence of multiple known members of a gang known to engage in narcotics distribution, when coupled with all other facts articulated in the affidavit, further supported the probable cause finding that narcotics distribution was occurring at the residence. Harris, 20 F.3d at 451 (information in an affidavit was not stale where it alleged ongoing activity and a continuing relationship between co-conspirators).

**2. Particularity of the Search Warrant.**

Defendant argued that the search warrant failed to meet the particularity requirement of the Fourth Amendment because it failed to mention that the 3001 property consisted of two residences. The 3001 property is a small home with an attached efficiency toward the rear, which is separated

by an inner partition. The description in the warrant made no distinction between the main property and the efficiency. The Government argued that the affidavit particularly described the entire residence as the place to be searched and that suppression was not warranted because the agents reasonably relied in good faith upon the facially valid search warrant to conduct a search of the entire residence.

Pursuant to the Fourth Amendment, warrants must "particularly describ(e) the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982). The Fourth Amendment only requires that a search warrant provide a description of the premises such that an officer may "with reasonable effort ascertain and identify the place intended." United States v. Weinstein, 762F.2d 1522, 1532 (11th Cir. 1985) (citing Steele v. United States No. 1, 267 U.S. 498, 503, 45 S.Ct. 414, 416 (1925)). Here, despite the fact that the residence had been divided into two areas, the agents"could still ascertain with reasonable effort the place intended" to be searched. The Search Warrant contained the correct address along with a detailed description of the premises to be searched in Attachment "A" thereto.

In Maryland v. Garrison, 480 U.S. 79, 87 (1987), the Supreme Court upheld a search of a third floor apartment that was believed to contain only one apartment but was discovered to contain a second apartment during the search. The Court noted that the officer's conduct must be analyzed in light of the evidence that was available at the time the warrant was sought. It held that "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively

invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discovery and to disclose to the issuing Magistrate." Id. At 85. In United States v. Schwinn, 376 Fed. App'x 974, 979-80 (11th Cir. 2010), the court ruled that, "as long as probable cause existed to search the entire area described in the warrant [] when the warrant [was] issued, the warrant is valid." Id. At 980.

Here, at the time they applied for the warrant, the agents were unaware that the residence contained an efficiency in the back. The agents possessed a warrant for the entire single family residence. See United States v. Ayers, 924 F.2d 1468, 1480 (9th Cir. 1991) ("A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence"). The 3001 property had one entrance and no numbering indicating more than one residence. The public records revealed one electric account. The efficiency was not listed anywhere in the public record and merely consisted of a partition within the house that was only discovered upon entry. There was no way for the agents to know that the house contained two separate sections or that Defendant resided in a separate portion of the house from looking at the 3001 property from the outside. See United States v. Johnson, 290 Fed. App'x 214, 221-22 (11th Cir. 2008) (Second-floor apartment was found not to contain multiple units because there was a single numeric address without apartment numbers, three separate door buzzers had been dismantled, and there was a single FPL bill for the second floor; but even if there was more than one apartment on the second floor, the affiant officer reasonably believed there was a single residence).

**3. Exclusionary Rule**

Even if the undersigned were to find that the warrants in this case were deficient as to particularity, or some other aspect, so as to render them lacking in probable cause, the searches may fall within the application of the good-faith exception to the exclusionary rule under United States v. Leon, 468 U.S. 897, 922-24 (1984); United States v. Travers, 233 F.3d 1327 (11th Cir. 2000) (good faith exception to the exclusionary rule is applicable to the particularity requirement). The Government bears the burden to prove applicability of the good-faith exception. Travers, 233 F.3d at 1331, n.2.

The Government argued that the agents reasonably relied on the facially valid search warrant in good faith to conduct a search of the entire residence. See Massachusetts v. Sheppard, 468 U.S. 981, 989 (1984) (despite warrant's failure to meet the particularity requirement, the good faith exception permitted introduction of seized evidence where officers "took every step that could reasonably be expected of them"). However, Defendants argued that the good-faith exception is inapplicable because the degree of deficiency of probable cause and the failure to particularize in the warrants precluded reasonable reliance thereon. In United States v. Robinson, the Eleventh Circuit Court of Appeals stated that the good-faith exception does not apply where: (1) a magistrate judge issues a warrant based on a deliberately or recklessly false affidavit; (2) a magistrate judge fails to act in a neutral and detached manner; (3) an affidavit was so lacking in probable cause as to render belief in its existence entirely unreasonable; and (4) a warrant was so facially deficient that no reasonable officer could reasonably presume it to be valid. 336 F.3d 1293, 1296 (11th Cir. 2003).

Nothing in the present record indicates that there was any reasonable basis to believe that the warrants were invalid due to any of those circumstances. In fact, under Leon, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." United States v. Ross, 456 U.S. 798, 823, n. 32 (1982). As such, the undersigned finds that, even if the warrants were found to have been issued without probable cause, reliance thereon would have fallen within the good-faith exception to the exclusionary rule.

**Conclusion**

Upon thorough review of the written and oral arguments, the oral testimony, the record evidence, as well as the applicable legal principles, the undersigned concludes that none of Defendant Gray's arguments supports suppression of the evidence obtained from the execution of the Search Warrant on his residence on November 17, 2009. The evidence demonstrated that the Search Warrant was supported by probable cause as detailed in the Affidavit and Application. Finally, the evidence demonstrated that the Search Warrant was sufficiently particularized to comport with the mandates of the Fourth Amendment.

**Recommendation**

In light of the foregoing, it is the **RECOMMENDATION** of the undersigned that Defendant Artrell Terrence Gray's Motion to Suppress **[DE 598]** be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal

any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 3 day of May 2011.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Hon. Joan A. Lenard
All counsel of record